IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re**: § § § | | |
| | § | Joint Administration Requested |
| **DAY ONE DISTRIBUTION LLC,** *et al.* | § § | Under Case No. (24-31133-11) |
| Debtors.¹ | § § | (Subchapter V) |

**EMERGENCY**
**MOTION (I) FOR INTERIM AUTHORITY TO**
**USE CASH UNDER 11 U.S.C. §363 AND §105 AND**
**(II) REQUEST FOR A FINAL HEARING**

*************************************************************************

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 14 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AND DECIDE THE MOTION AT THE HEARING OR MAY DECIDE THE MOTION WITHOUT HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

**\*\* EMERGENCY CONSIDERATION HAS BEEN REQUESTED. YOU WILL HAVE LESS THAN 14 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED; YOU SHOULD FILE AN IMMEDIATE RESPONSE OR APPEAR AT THE SCHEDULED HEARING.\*\***

TO THE HONORABLE EDUARDO V. RODRIGUEZ
CHIEF UNITED STATES BANKRUPTCY JUDGE:

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are Day One Distribution, LLC (1125), Case No. 24-31133 and Zero Day Nutrition Company f/k/a GB Nutrition Company (7108), Case No. 24-31134. The location of the Debtors' service address is 12502 Exchange Dr., Suite 448, Stafford, TX 77477.

Day One Distribution LLC ("**DOD Debtor**") and Zero Day Nutrition Company ("**ZD Debtor**") (collectively "**Debtors**"), debtors and debtors in possession, file this *Emergency Motion (I) for Order Granting Interim Authority to Use Cash Collateral Under 11 U.S.C. §363 and §105 and (II) Request for a Final Hearing* (the "**Motion**") and in support thereof, respectfully states as follows:

### Summary and Emergency Basis

1. Debtors each filed a Subchapter V, Chapter 11 case on March 14, 2024.

2. Debtors hereby seek authorization to use cash collateral on an interim basis. Without such relief, Debtors will suffer immediate and irreparable harm because Debtors would be required to cease operations immediately, and Debtors ability to reorganize would be eliminated. Upon approval of this Motion, secured lenders with valid, perfected liens will be given replacement liens on post-petition receivables for use of its cash collateral, to the extent of diminution of its collateral, in accordance with the proposed budgets attached hereto as **Exhibits "A1" and "A2".**

3. Debtors anticipate obtaining consent of the necessary secured lenders to the relief requested herein. A proposed interim Order is attached hereto.

### I. Jurisdiction and Venue

4. This Court has jurisdiction over these cases pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(D).

5. Venue of the Debtors' Chapter 11 cases is proper in this district pursuant to 28 U.S.C. §§ 1409.

## II. Background Information

### A. Overview of the Debtor

6. On March 14, 2024 (the "**Petition Date**"), Debtors each commenced a bankruptcy case by filing a petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code under Case No. 24-31133 and Case No. 24-31134 (collectively "**Bankruptcy Cases**").

7. Debtors continue to operate their businesses and manage property as debtors and debtors in possession pursuant to Bankruptcy Code sections 1184.

8. A Subchapter V Trustee has not yet been appointed.

9. DOD Debtor is a Texas limited liability company and ZD Debtor is a Texas corporation. Debtors are engaged in the manufacturing and sale of sports nutrition and dietary supplements. ZD Debtor manufactures products which are sold by DOD Debtor, as well as third parties. The companies share offices in Stafford, Texas where the manufacturing facility is also located. The entities share common ownership. Additional information regarding the companies can be found in the Declaration of Michael Bischoff in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings filed contemporaneous with this motion.

10. Debtors initiated the Bankruptcy Cases due to a serious cash flow problem created by significant daily deductions from various MCA Lenders. Prepetition MCA Lenders require daily withdrawals from the bank accounts of DOD Debtor and ZD Debtor. The aggregate amount of the <u>monthly</u> withdrawals increased over time to more than $300,000, which greatly exceeded the Debtors' capacity and created significant cash flow issues. The company soon became unable to pay its ongoing expenses.

11. Additionally, several of the MCA Lenders recently contacted some customers of Debtors, instructing that payments be diverted from Debtors directly to the MCA Lenders. These

actions have left the company with very little cash for operations, thereby prompting these Chapter 11 bankruptcy filings.

12.     Debtors intend to utilize these Chapter 11 cases to streamline operations and reorganize prepetition debt through a Chapter 11 plan. Absent Chapter 11 restructuring, the company is likely to cease operations and liquidate.

### B. Financing History for Day One Distribution LLC

#### a. Parties Asserting Secured Liens Against Cash Collateral[2]

13.     On or about August 28, 2020, DOD Debtor entered into a Loan Authorization and Agreement and related documents with U.S. Small Business Administration whereby this lender provided a loan of $52,400 ("**SBA Loan**"). The SBA Loan is secured by a first lien[3] on substantially all assets of DOD Debtor, including, but not limited to, accounts and accounts receivable. As of the Petition Date, the outstanding balance owed with respect to SBA Loan is approximately $56,395.

14.     Further, on or about September 27, 2022, DOD Debtor entered into a Growth Line of Credit Agreement with Ampla LLC, with the highest outstanding balance being $1,414,366 ("**Ampla Loan**"). Ampla Loan is secured by a second lien[4] on all assets of DOD Debtor. As of the Petition Date, the outstanding balance owed with respect to Ampla Loan is approximately $637,620.

15.     Additionally, in May 2023, DOD Debtor entered into a three agreements with Ouiby Inc., with the original aggregate balance of approximately $841,646 ("**Ouiby**

---

[2] The lienholders listed in this motion have filed UCC-1 statements with the Texas Secretary of State records asserting liens. By including the same herein, DOD Debtor does not waive its right to dispute any lien asserted by any alleged lienholder.
[3] Pursuant to Texas Secretary of State records, UCC 1 filed on September 6, 2020.
[4] Pursuant to Texas Secretary of State records, UCC 1 filed on September 28, 2022.

**Agreements**"). The Ouiby Agreements were each originally secured by liens[5] on specific consigned inventory of DOD Debtor. However, on February 16, 2024, Quiby Inc. filed an amended UCC-1 to assert a lien on all of DOD Debtor's assets with respect to one of the agreements, whereby one is secured by lien on all assets. As of the Petition Date, the collective outstanding balance owed with respect to the Ouiby Agreements is approximately $376,392.

16. Moreover, on or about October 30, 2023, DOD Debtor entered into a Standard Merchant Cash Advance Agreement with 3PCG Inc., with the original balance of $149,900 ("**3PCG Agreement**"). 3PCG Agreement is secured by a lien[6] on all assets of DOD Debtor, including, but not limited to, deposit accounts. As of the Petition Date, the outstanding owed with respect to 3PCG Agreement is approximately $114,629.

17. Additionally, on or about October 6, 2023, DOD Debtor entered into a Merchant Agreement with CFS CAP, LLC, with the original balance of $150,000 ("**CFS Agreement**"). CFS Agreement is secured by a lien[7] on all assets of DOD Debtor, including, but not limited to, proceeds of each sale. As of the Petition Date, the outstanding balance owed with respect to CFS Agreement is $157,368.

### b. UCC-1 – still being investigated

18. On May 12, 2022 and January 2, 2024, separate UCC-1's were filed with the Texas Secretary of State by Corporate System, as representative, asserting a lien on all assets of DOD Debtor. As of the Petition Date, DOD Debtor has been unable to determine what loan these may relate to and is continuing to investigate this matter.

---

[5] Pursuant to Texas Secretary of State records, three UCC 1 were filed on each agreement, on June 8, 2023; June 8, 2023; and June 23, 2023.
[6] Pursuant to Texas Secretary of State records, UCC 1 filed on December 22, 2023.
[7] Pursuant to Texas Secretary of State records, UCC 1 filed on January 12, 2024.

### C. Financing History for Zero Day Nutrition Company

#### a. Parties Asserting Secured Liens Against Cash Collateral[8]

19. On or about December 19, 2018, ZD Debtor[9] entered into a Loan Agreement and related documents with Texas Gulf Bank whereby this lender provided a loan in the amount of $1.5 million ("**Texas Gulf Bank Loan**"). The Texas Gulf Bank Loan is secured by a lien[10] on substantially all assets of ZD Debtor, including cash, accounts, and accounts receivable. As of the Petition Date, the outstanding balance owed with respect to Texas Gulf Bank Loan is approximately $908,153.74.

20. Further, on or about August 6, 2020, ZD Debtor entered into a Loan Authorization and Agreement with the U.S. Small Business Administration whereby this lender provided a loan in the amount of $150,000 ("**ZD SBA Loan**"). The ZD SBA Loan is secured by a lien[11] on substantially all assets of ZD Debtor, including inventory, equipment, and accounts. As of the Petition Date, the outstanding balance owed with respect to ZD SBA Loan is approximately $161,059.

21. Moreover, on or about October 30, 2023, ZD Debtor entered into a Standard Merchant Cash Advance Agreement with 3PCG Inc., with the original balance of $149,900 ("**3PCG Agreement**"). 3PCG Agreement asserts a lien[12] on all assets of ZD Debtor, including, but not limited to, deposit accounts. As of the Petition Date, the outstanding owed with respect to 3PCG Agreement is approximately $114,629.

---

[8] The lienholders listed in this motion have filed UCC-1 statements with the Texas Secretary of State records asserting liens. By including the same herein, ZD Debtor does not waive its right to dispute any lien asserted by any alleged lienholder.
[9] Texas Gulf Bank Loan was initially between GB Nutrition Company, the name formerly used by ZD Debtor. Texas Gulf Bank Loan updated its UCC Lien with to change the name on January 17, 2020, according to the Texas Secretary of State records.
[10] Pursuant to Texas Secretary of State records, UCC 1 filed on January 10, 2019.
[11] Pursuant to Texas Secretary of State records, UCC 1 filed on August 15, 2020.
[12] Pursuant to Texas Secretary of State records, UCC 1 filed on December 22, 2023.

22. Finally, on or about October 6, 2023, ZD Debtor entered into a Merchant Agreement with CFS CAP, LLC, with the original balance of $150,000 ("**CFS Agreement**"). CFS Agreement asserts a lien[13] on all assets of ZD Debtor. As of the Petition Date, the outstanding balance owed with respect to CFS Agreement is $157,368.

23. A UCC-1 dated February 24, 2022, was filed by Leaf Capital Funding LLC asserting a lien on substantially all assets of ZD Debtor. However, ZD Debtor's records indicate that the loan subject to this UCC-1 has been paid in full and the UCC-1 should be terminated.

      b. **UCC-1– still being investigated**

24. On May 12, 2022 and January 2, 2024, separate UCC-1's were filed with the Texas Secretary of State by Corporate System, as representative, asserting a lien on all assets of ZD Debtor. As of the Petition Date, ZD Debtor has been unable to determine what loan these may relate to and is continuing to investigate this matter.

### III. BASIS FOR REQUESTED RELIEF

  A. **Cash Collateral and Authority to Use**

25. Debtors hereby seek authority to use the cash Collateral in connection with this bankruptcy cases to preserve the value of Debtors' businesses. A proposed 14-day budget is attached hereto as Exhibit "A-1" ("**DOD Debtor's Interim Budget**") and Exhibit "A-2" ("**ZD Debtor's Interim Budget**"). Although the secured lenders for both DOD Debtor and ZD Debtor have not yet agreed to the use of cash collateral or the proposed interim budgets, Debtors expect that an agreement will be reached.

26. Pursuant to the Bankruptcy Code, Debtors are required to provide adequate protection to the secured lenders with respect to use of cash collateral. While the terms of an

---

[13] Pursuant to Texas Secretary of State records, UCC 1 filed on January 12, 2024.

agreed order have not been finalized, Debtors expect that an agreed order will include, among others, the following:

> A.   Debtors may use cash Collateral pursuant to an approved budget, with a 10% variance per line item and the ability to apply any un-used budgeted funds at its discretion.
>
> B.   Prepetition liens of secured lenders will be adequately protected by replacement liens to the same extent and priority as its prepetition liens to the extent that cash collateral is used.

27.   The only viable source of funding for post-petition operations is cash collateral made available to Debtors.

28.   Without the use of cash collateral on an interim basis, Debtors would suffer immediate and irreparable harm pending a final hearing on the Motion.

29.   The importance in cases like these of access to cash was recognized in *In re George Ruggieri Chrysler-Plymouth, Inc.*, 727 F.2d 1017 (11th Cir. 1984). The court in that case noted: "A debtor, attempting to reorganize in business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild." Id. at 1019. 31.  Debtors anticipate that valid secured lenders will consent to the proposed use of cash Collateral, subject to receiving replacement liens and perhaps other protections as provided in an agreed order.  To the extent they do not consent, however, the Court may authorize the use of cash collateral by Debtors provided that the Court determines that any objecting entity's interest is adequately protected. 11 U.S.C. § 363(c)(2)(B) and (e).

30.   Section 361 sets forth three non-exclusive examples of what may constitute adequate protection.  They include providing the secured creditor with "additional or replacement liens" and other relief that provides the secured creditor with the "indubitable equivalent" of the

secured creditor's interest in the cash collateral. Legislative history indicates that Congress intended to provide courts with flexibility to grant relief on a case-by-case basis.

31. Pursuant to the Motion, Debtors propose to grant secured lenders replacement liens on post-petition accounts receivable, a recognized method for providing adequate protection as specified under sections 361 and 363.

32. In exchange for the use of cash collateral, as adequate protection for the use of the cash Collateral, but only to the extent of the actual diminution in value of the pre-petition collateral, Debtors propose to grant to secured lenders replacement liens in the form of security interests and liens upon the same types and kinds of assets upon which they held a prepetition lien, subject only to valid, perfected, and enforceable prepetition liens (if any) which are senior as of the Petition Date, as well as an additional lien upon the Debtors' post-petition accounts and accounts receivables. The grant of replacement liens will only apply to the extent that the pre-petition collateral was encumbered by valid and perfected liens and security interests (collectively, the "**Replacement Liens**"). The Replacement Liens will not attach to any avoidance actions under Chapter 5 of the Bankruptcy Code.

33. Without access to cash collateral, the value of the Debtors' assets will plummet. From that standpoint, the overall collateral position of the secured lenders will deteriorate markedly, more than offsetting any erosion of the cash collateral.

34. Bankruptcy Rule 4001(c)(2) states that 14 days' notice must be given before final approval of such cash Collateral use is given. With this Motion, Debtors are providing secured lenders with 14 days' notice between the time of the filing of this Motion and request that the Court set a final hearing on this matter upon expiration of the 14 day notice period, or as soon thereafter as is practical. Debtors will suffer irreparable harm if the Motion is not immediately

considered as they do not have the funds to continue operations. There is little harm to general unsecured creditors under this agreement since the secured lenders already have liens on Debtors' accounts, chattel paper, deposit accounts, letter of credit rights, general intangibles and inventory, including accounts receivable and cash.

35. Debtors request that this Court enter the preliminary order attached hereto; set a final hearing on this Motion pursuant to Bankruptcy Rule 4001 if objections are filed, and at such hearing, authorize Debtors to continue using its cash Collateral for the remainder of these Chapter 11 cases.

## IV. Conclusion

WHEREFORE, Debtors respectfully request that the Bankruptcy Court:

1) Enter a preliminary order authorizing the use of cash collateral pursuant to the proposed budgets for 14 days;

2) Set a final hearing on this Motion after expiration of fourteen (14) days' notice period required by Bankruptcy Rule 4001, or as soon thereafter as practical, if objections are filed;

3) At such final hearing, granting Debtors the authority to continue the use of cash collateral until a plan is confirmed in this case or the case is dismissed, whichever happens earlier; and

4) Granting all such other and further relief as is just and proper.

DATED: March 14, 2024                    Respectfully submitted,

**HASELDEN FARROW PLLC**

By:      /s/ Melissa Haselden
MELISSA A. HASELDEN
State Bar No. 00794778
700 Milam, Suite 1300
Pennzoil Place
Houston, Texas 77002
Telephone: (832) 819-1149
Facsimile: (866) 405-6038
mhaselden@haseldenfarrow.com
*Proposed Attorneys for Debtors and*
*Debtors in Possession* DAY ONE DISTRIBUTION LLC
AND ZERO DAY NUTRITION COMPANY

**OF COUNSEL:**
**HASELDEN FARROW PLLC**
Elyse M. Farrow
State Bar No. 24062719
700 Milam, Suite 1300
Pennzoil Place
Houston, Texas 77002
Telephone: (832) 819-1149
Facsimile: (866) 405-6038
efarrow@haseldenfarrow.com
*Proposed Attorneys for Debtors and*
*Debtors in Possession* DAY ONE DISTRIBUTION LLC
AND ZERO DAY NUTRITION COMPANY

**EXHIBIT "A-1"**

**DAY ONE DISTRIBUTION LLC
PROPOSED 14-DAY BUDGET**

Day One Distribution

# Cash flow forecast

| Week | 1 | 2 | |
|---|---|---|---|
| | 3/12/2024 | 3/19/2024 | 3/26/2024 |
| Cash Frozen Beg | $ 40,712 | $ - | $ - |
| Cash on hand Beg | $ 4,950 | $ - | $ - |
| Cash on hand (beginning of month) Total | $ 45,662 | $ 50,153 | $ 50,123 |

**Cash receipts**

| | | | |
|---|---|---|---|
| Direct Sales (Shopify, Amazon) | $ 11,000 | $ 11,000 | $ 11,000 |
| Wholesale Deposit or PIF | $ 11,000 | $ 11,000 | $ 11,000 |
| AR Collections | $ - | $ - | $ - |
| Loan | $ - | $ - | $ - |
| Equity Injection | $ - | $ - | $ - |
| Other | $ - | $ - | $ - |
| | $ - | $ - | $ - |
| Total cash receipts | $ 22,000 | $ 22,000 | $ 22,000 |
| Total cash available | $ 67,662 | $ 72,153 | $ 72,123 |

**Cash paid out**

| | | | |
|---|---|---|---|
| COGS Postage, Shipping, Freight Cost | $ 1,500 | $ 2,500 | $ 2,500 |
| COGS Production Labor | $ - | $ - | $ - |
| COGS Product | $ - | $ - | $ - |
| Personnel | $ 10,122 | $ 6,854 | $ 6,854 |
| Contractors and Consultants | $ 5,887 | $ 5,887 | $ 5,887 |
| Facilities - Rent | $ - | $ - | $ - |
| Facilities - Cleaning & Contract Services | $ - | $ - | $ - |
| Facilities - Repairs and Maintenance | $ - | $ - | $ - |
| Utilities - Fire Alarm | $ - | $ - | $ - |
| Utilities - Trash and Recycling | $ - | $ - | $ 1,059 |
| Utilities - Alarm Service | $ - | $ - | $ - |
| Utilities - Utilities/Electric Services | $ - | $ - | $ - |
| Warehouse - Rental Equipment | $ - | $ - | $ - |
| Warehouse - Warehouse supplies | $ - | $ - | $ - |
| Marketing - Advertising and Promotion | $ - | $ - | $ - |
| Marketing - Marketing | $ - | $ - | $ - |
| Administrative | $ - | $ - | $ - |
| Bank/Credit Card/Merchant Gees | $ - | $ - | $ 220 |
| Automobile Expense | $ - | $ 434 | $ - |
| Computer and Internet Expenses | $ - | $ 6,356 | $ 2,381 |
| Dues and Subscriptions | $ - | $ - | $ - |
| Office Supplies | $ - | $ - | $ - |
| Research and Development | $ - | $ - | $ - |
| Taxes | $ - | $ - | $ - |
| Telephone Expense | $ - | $ - | $ - |
| Professional Fees | | | |
| Travel and Entertainment | $ - | $ - | $ - |
| | $ - | $ - | $ - |
| Subtotal | $ 17,509 | $ 22,031 | $ 18,901 |
| Cash on hand (end of week) | $ 50,153 | $ 50,123 | $ 53,222 |

**EXHIBIT "A-2"**

**ZERO DAY NUTRITION COMPANY
PROPOSED 14-DAY BUDGET**
13

# Zero Day
## Cash flow forecast

| Week | 1 | 2 | 3 |
|---|---|---|---|
| | 3/12/2024 | 3/19/2024 | 3/26/2024 |
| Cash Frozen Beg | $ 18,100 | $ - | $ - |
| Cash on hand Beg | $ 18,549 | $ - | $ - |
| Cash on hand (beginning of month) | $ 36,649 | $ 129,631 | $ 130,515 |

### Cash receipts

| | | | |
|---|---|---|---|
| Direct Sales (Shopify, Amazon) | $ - | $ - | $ - |
| Wholesale Deposit or PIF | $ 141,125 | $ 28,748 | $ 7,000 |
| AR Collections | $ - | $ - | $ - |
| Loan | $ - | $ - | $ - |
| Equity Injection | $ - | $ - | $ - |
| Other | $ - | $ - | $ - |
| | $ - | $ - | $ - |
| Total cash receipts | $ 141,125 | $ 28,748 | $ 7,000 |
| Total cash available | $ 177,774 | $ 158,379 | $ 137,515 |

### Cash paid out

| | | | |
|---|---|---|---|
| COGS Postage, Shipping, Freight Cost | $ 4,226 | $ 3,500 | $ 122 |
| COGS Production Labor | $ 9,963 | $ 9,963 | $ 9,963 |
| COGS Product | $ 23,000 | $ - | $ - |
| Personnel | $ 10,318 | $ 12,818 | $ 12,818 |
| Facilities - Rent | $ - | $ - | $ - |
| Facilities - Cleaning & Contract Services | $ - | $ - | $ - |
| Facilities - Repairs and Maintenance | $ - | $ 749 | $ - |
| Utilities - Fire Alarm | $ - | $ 70 | $ - |
| Utilities - Trash and Recycling | $ - | $ - | $ 1,900 |
| Utilities - Alarm Service | $ - | $ 32 | $ 49 |
| Utilities - Utilities/Electric Services | $ - | $ - | $ - |
| Warehouse - Rental Equipment | $ 636 | $ - | $ - |
| Warehouse - Warehouse supplies | $ - | $ - | $ - |
| Marketing - Advertising and Promotion | $ - | $ - | $ 477 |
| Marketing - Marketing | $ - | $ - | $ 18 |
| Administrative | $ - | $ - | $ 40 |
| Bank/Credit Card/Merchant Gees | $ - | $ - | $ - |
| Automobile Expense | $ - | $ - | $ - |
| Computer and Internet Expenses | $ - | $ 731 | $ 294 |
| Dues and Subscriptions | $ - | $ - | $ - |
| Office Supplies | $ - | $ - | $ - |
| Research and Development | $ - | $ - | $ 128 |
| Taxes | $ - | $ - | $ - |
| Telephone Expense | $ - | $ - | $ 375 |
| Professional Fees | $ - | $ - | $ - |
| Travel and Entertainment | $ - | $ - | $ - |
| | $ - | $ - | $ - |
| Subtotal | $ 48,143 | $ 27,864 | $ 26,184 |
| | | | |
| Cash on hand (end of Week) | $ 129,631 | $ 130,515 | $ 111,331 |