IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re**: | § § § | |
| | § | Jointly Administered |
| **DAY ONE DISTRIBUTION LLC,** *et al.* | § § | Under Case No. (24-31133-11) |
| Debtors[1] | § § | (Subchapter V) |

**MOTION PURSUANT TO 11 U.S.C. §365 TO REJECT VEHICLE LEASE AGREEMENT WITH MOMENTUM BMW MINI EFFECTIVE AS OF MARCH 14, 2024**

> THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.
>
> REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE EDUARDO V. RODRIGUEZ
CHIEF UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively the "**Debtors**")

states as follows in support of this motion (this "**Motion**"):

## I.   SUMMARY OF RELIEF REQUESTED

1.   The above captioned jointly administered cases were each filed on March 14, 2024.

Pursuant to section 365(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are Zero Day Nutrition Company f/k/a GB Nutrition Company (7108), Case No. 24-31134 and Day One Distribution, LLC (1125), Case No. 24- 31133. The location of the Debtors' service address is 12502 Exchange Dr., Suite 448, Stafford, TX 77477.

Rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors request authorization to reject that certain vehicle lease agreement with BMW described below.

2. The Debtors request that the rejection of the BMW vehicle lease agreement be effective as of March 14, 2024.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over these cases pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (O). The relief requested herein is authorized under Sections 365 of the Bankruptcy Code. Venue of the Debtors' Chapter 11 cases is proper in this district pursuant to 28 U.S.C. §§ 1408(1) and (2).

## III. BACKGROUND INFORMATION

4. The above captioned Chapter 11 bankruptcy cases were each filed on March 14, 2024 ("**Petition Date**") under Title 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. (the "**Bankruptcy Code**").

5. The Debtors each continue to operate their respective businesses and manage their property as debtors and debtors in possession pursuant to Bankruptcy Code sections 1184.

6. On March 18, 2024, Drew McManigle was appointed as Subchapter V Trustee in these cases [Docket No. 29].

7. Additional information relative to the Debtors can be found in more detail in the Declaration of Michael L. Bischoff, Jr. in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings [Docket No. 13].

8. The Debtors' goal is to stabilize operations and propose a Chapter 11 Plan or Reorganization which contemplates payments to prepetition creditors.

## IV.   THE CONTRACTS

9. Debtors seek to reject the Motor Vehicle Lease Agreement (Closed End) with Momentum BMW Mini for the lease of 2023 BMW 760xi[2] ("**Vehicle Lease**"). A copy of the Vehicle Lease[3] is attached hereto as Exhibit A.

10. Prior to the Petition Date, on or about February 9, 2023, Debtor Day One Distribution, LLC ("**DOD Debtor**") entered into the Vehicle Lease for the lease of 2023 BMW 760xi for a term of thirty-six months, with a buyout option at lease end.

11. The vehicle subject to the Vehicle Lease is an automobile that was utilized by prior management of DOD Debtor which requires monthly payments of approximately $2,561.19 (plus mileage) through February 2026, at which time the debtor is able to purchase the vehicle for $62,510.85.

12. The Vehicle Lease is not necessary for DOD Debtor's continuing business operations or the administration of its estate and maintaining the Vehicle Lease would impose unnecessary costs and burdens on DOD Debtor's estate. Upon information and belief, the vehicle has been turned into the lessor. Accordingly, the Debtor submits this Motion to reject the Vehicle Lease.

**A. Rejection of the Vehicle Lease Reflects Debtor DOD's Sound Business Judgment**

13. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *see also In re Lavigne*, 114 F.3d 379, 386 (2d Cir. 1997). "[T]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in possession to

---

[2] The Vehicle Lease replaced a prior lease agreement for the lease of a 2022 BMW X7 entered into on or about November 27, 2021. The 2022 BMW X7 was turned in as a trade in in connection with the Lease.
[3] Rejection of the Vehicle Lease includes rejection of all prior agreements, amendments, and modifications thereto.

3

use valuable property of the estate and to 'renounce title to and abandon burdensome property.' " *Orion Pictures Corp. v. Showtime Networks, Inc.* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1098 (2d Cir. 1993), *cert. dismissed*, 511 U.S. 1026 (1994).

14. Courts defer to a debtor's business judgment in rejecting an executory contract or unexpired lease, and upon finding that a debtor has exercised its sound business judgment, approve the rejection under section 365(a) of the Bankruptcy Code. *See Bildisco & Bildisco*, 465 U.S. at 523 (recognizing the "business judgment" standard used to approve rejection of executory contracts and unexpired leases); *Nostas Assocs. v. Costich* (*In re Klein Sleep Products, Inc.*), 78 F.3d 18, 25 (2d Cir. 1996) (recognizing the "business judgment" standard used to approve rejection of executory contracts); *In re Minges*, 602 F.2d 38, 42–43 (2d Cir. 1979) (holding that the "business judgment" test is appropriate for determining when an executory contract can be rejected); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994), *aff'd*, 187 B.R. 111 (S.D.N.Y. 1995) (approving rejection of license by debtor because such rejection satisfied the "business judgment" test); *In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992) (stating that a debtor may assume or reject an unexpired lease under § 365(a) in the exercise of its "business judgment").

15. The "business judgment" standard is not a strict standard; it requires only a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. *See In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 1996) ("To meet the business judgment test, the debtor in possession must 'establish that rejection will benefit the estate.'") (citation omitted); *In re Balco Equities, Inc.*, 323 B.R. 85, 99 (Bankr. S.D.N.Y. 2005) ("In determining whether the debtor has employed reasonable business discretion, the court for the most part must only determine that the rejection will likely benefit the estate.") (quoting *G*

*Survivor*, 171 B.R. at 757)). Further, under the business judgment standard, "[a] debtor's decision to reject an executory contract must be summary affirmed unless it is the product of 'bad faith, or whim or caprice' " *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001).

16. As noted above, DOD Debtor has reviewed the Vehicle Lease and determined, in the exercise of its business judgment, the Vehicle Lease is no longer necessary for or beneficial to DOD Debtor's ongoing business and creates unnecessary and burdensome expenses for the Debtor's estate. In addition, DOD Debtor has determined that no meaningful value would be realized by the Debtor if the Vehicle Lease was assumed and the vehicle sold. Accordingly, the Vehicle Lease should be rejected.

## V.   NOTICE

17. Notice of this Motion has been provided to parties in interest in accordance with Local Bankruptcy Rule 9013(d), and to counterparties to the Vehicle Lease. The Debtors submit that such notice is sufficient, and no other or further notice need be provided.

Dated:  May 6, 2023

**HASELDEN FARROW PLLC**

By: */s/ Melissa A. Haselden*
MELISSA A. HASELDEN
State Bar No. 00794778
700 Milam, Suite 1300
Pennzoil Place
Houston, Texas 77002
Telephone: (832) 819-1149
Facsimile: (866) 405-6038
mhaselden@haseldenfarrow.com
*Attorneys for Debtors and Debtors in Possession Day One Distribution, LLC and Zero Day Nutrition Company*

OF COUNSEL:
**HASELDEN FARROW PLLC**
Elyse M. Farrow
State Bar No. 24062719
700 Milam, Suite 1300
Pennzoil Place
Houston, Texas 77002
Telephone: (832) 819-1149
Facsimile: (866) 405-6038
efarrow@haseldenfarrow.com
*Attorneys for Debtors and Debtors in Possession*
*Day One Distribution, LLC and Zero Day Nutrition*
*Company*

## **CERTIFICATE OF SERVICE**

     I hereby certify that on May 6, 2023, a true and correct copy of the foregoing Motion to Reject Vehicle Lease, and the proposed Order have been served via electronic mail, to the parties on the Court ECF system. A separate declaration of mailing will be filed for service to parties by First Class US Mail, postage prepaid.

                                  */s/Melissa A. Haselden*

                                  MELISSA A. HASELDEN

# BMW Financial Services NA, LLC
## Motor Vehicle Lease Agreement (Closed End)

**DEAL#** 645994
**STK#** PCM58227
**CUST#** 369259
**FORM#** 98656 SA237S-FI

**Consumer Paper** (If Lease is for personal use)

### 1. PARTIES

| Lessor (Center) Name and Address | Lessee and Co-Lessee Name and Address | Vehicle Garaging Address |
|---|---|---|
| MOMENTUM BMW MINI<br>9570 SOUTHWEST FREEWAY<br>HOUSTON TX 77074 | DAY ONE DISTRIBUTION LLC<br>2703 QUENBY AVE<br>HOUSTON, TX 77005<br>MICHAEL LYNN BISCHOFF JR<br>2703 QUENBY AVE<br>HOUSTON, TX 77005 | N/A<br><br>**Contact Address**<br>N/A |

**2. Agreement to Lease.** Lessee and any co-lessee ("Lessee") is entering into this Motor Vehicle Lease Agreement ("Lease") with the lessor identified above ("Lessor") to lease the vehicle described below ("Vehicle"). "You" and "your" refer to Lessee and "Lessor", "we", "us" and "our" refer to Lessor or Lessor's assignee. Lessor will assign this Lease to BMW Financial Services NA, LLC ("BMW FS") or, if this box is checked ☒ Financial Services Vehicle Trust ("Assignee"). BMW FS will administer this Lease on behalf of any assignee. The Federal Consumer Leasing Act Disclosures below are part of this Lease and are made on behalf of Lessor and Assignee.

**3. Date of Lease, Lease Term and Scheduled Maturity Date.** This Lease is entered into on 02/09/2023 for a term of 36 months ("Lease Term") ending on 02/11/2026 ("Scheduled Maturity Date").

### 4. VEHICLE DESCRIPTION. Lessee agrees to provide Lessor the permanent license plate number promptly upon Lessee's receipt.

| A. Leased Vehicle | Model Year | Make & Model | VIN | Odometer/Mileage | Primary Use: Your primary use of the Vehicle is personal, family or household use unless either is checked: ☒ Business ☐ Agricultural |
|---|---|---|---|---|---|
| ☒ New ☐ Used | 2023 | BMW 760xi | WBA33EJ06PCM58227 | 12 | |
| **B. Trade-In** | Model Year | Make & Model | VIN | Agreed Upon Value | Prior Credit or Lease Balance | Titled to Lessee |
| | 2022 | BMW X7 M50i | 5UXCX6C09N9K14896 | 80000.00 | 91891.23 | ☒ Yes ☐ No |

### FEDERAL CONSUMER LEASING ACT DISCLOSURES

| 5. AMOUNT DUE AT LEASE SIGNING OR DELIVERY (Itemized in Section 9) | 6. MONTHLY PAYMENTS | 7. OTHER CHARGES (Not part of your Monthly Payments) | 8. TOTAL OF PAYMENTS (The amount you will have paid by the end of the Lease Term) |
|---|---|---|---|
| $ 4000.00 | Your first monthly payment of $ 2561.19 is due on 02/09/23 followed by 35 payments of $ 2561.19 due on the 11th day of each month. The total of your monthly payments is $ 92202.84. | A. Disposition Fee (if you do not purchase the Vehicle) $ 495.00<br>B. N/A $ N/A<br>TOTAL $ 495.00 | $ 94136.65 |

### 9. ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

**A. Amount Due at Lease Signing or Delivery**
1. Capitalized Cost Reduction $ 1076.56
2. First Monthly Payment $ 2561.19
3. Refundable Security Deposit $ N/A
4. Initial Title Fees $ 33.00
5. Initial Registration Fees $ N/A
6. Initial License Fees $ 157.25
7. Sales/Use/Excise Tax $ N/A
8. Acquisition Fee $ N/A
9. Sales Tax on Capitalized Cost Reduction $ N/A
10. **Doc Fee** $ 157.25
11. **N/A** $ N/A
12. **N/A** $ N/A
13. **Convenienc** $ 10.00
14. **N/A** $ N/A
15. **Processing Fee** $ 4.75
16. **N/A** $ N/A
TOTAL $ 4000.00

**B. How the Amount Due at Lease Signing or Delivery Will Be Paid**
1. Net Trade-In Allowance $ N/A
2. Rebates and Noncash Credits $ N/A
3. Amount to be Paid in Cash $ 4000.00
TOTAL $ 4000.00

### 10. YOUR MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW

A. **Gross Capitalized Cost.** The agreed upon value of the Vehicle ($ 115674.58) and any items you pay for over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) (See Section 13 for an itemization of this amount). $ 139513.66
B. **Capitalized Cost Reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost. – $ 1076.56
C. **Adjusted Capitalized Cost.** The amount used in calculating your Base Monthly Payment. = $ 138437.10
D. **Residual Value.** The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment. – $ 62510.85
E. **Depreciation and any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term. = $ 75926.25
F. **Rent Charge.** The amount charged in addition to the Depreciation and any Amortized Amounts. + $ 16276.59
G. **Total of Base Monthly Payments.** The Depreciation and any Amortized Amounts plus the Rent Charge. = $ 92202.84
H. **Lease Payments.** The number of payments in your Lease. ÷ 36
I. **Base Monthly Payment.** = $ 2561.19
J. **Monthly Sales/Use Tax.** + $ N/A
K. **N/A** + $ N/A
L. **Total Monthly Payment.** = $ 2561.19

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

**11. Excessive Wear.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 30000 miles over the Lease Term at a rate of .30 cents per mile. See Section 16 for more information.

**12. Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle ("as is") at the end of the Lease Term for its Residual Value of $ 62510.85 and a purchase option fee of $ 300.00. See Section 30 for more information.

**Other Important Terms.** See all pages of this Lease for additional information concerning purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interest.

**EXHIBIT A**

IF YOU DO NOT MEET YOUR OBLIGATIONS UNDER THIS LEASE, YOU MAY LOSE THE VEHICLE.

2201L (07/22) (NAT)

02/09/2023 05:15 pm

1 of 6

### 13. ITEMIZATION OF GROSS CAPITALIZED COST

| | | | | | |
|---|---|---|---|---|---|
| A. Agreed Upon Value of Vehicle | $ | 115674.58 | J. Other | $ | N/A |
| B. Initial Title, License & Registration Fees | $ | N/A | K. Other N/A | $ | N/A |
| C. Sales/Use/Excise Tax | $ | 2245.85 | L. Other N/A | $ | N/A |
| D. Sales Tax on Capitalized Cost Reduction | $ | N/A | M. Other COMPLETE THE 259.00 | $ | 259.00 |
| E. Prior Credit or Lease Balance | $ | 11891.23 | N. Other PermaPlate/W 2009.00 | $ | 2009.00 |
| F. Maintenance Agreement | $ | N/A | O. Other PERMAPLATE 899.00 | $ | 899.00 |
| G. Mechanical Breakdown Protection | $ | 2112.00 | P. Other JM&A ROAD HAZARD | $ | 3498.00 |
| H. Extended Warranty | $ | N/A | Q. Other N/A | $ | N/A |
| I. Acquisition Fee | $ | 925.00 | TOTAL | $ | 139513.66 |

As a condition to including in the Gross Capitalized Cost any prior credit or lease balance or premiums or costs for any optional contracts or products, you agree that in the event of a Total Loss of the Vehicle the remaining balance you owe on any prior credit or lease balance and any optional contract or product premiums or costs for which you are entitled a refund from the product provider will be immediately due and payable and not waived.

**14. Estimated Fees and Taxes.** $ 9695.82 is an estimate of the total amount you will pay for official and license fees, registration, title and taxes over the Lease Term, whether included in your Monthly Payments, paid at lease signing or separately billed to you. The actual total of official fees and taxes may be higher or lower depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed. This estimate is based on the Garaging Address and the total amount you pay may increase if you move. We may change your Monthly Payment for increases or decreases in taxes. We may invoice you for these items after the taxing authority has billed us which could be after the Lease terminates. **YOU ARE RESPONSIBLE FOR THE PAYMENT OF ALL TAXES ASSESSED ON THE VEHICLE OR LEASE DURING THE LEASE, INCLUDING WITHOUT LIMITATION: (1) ANY PERSONAL PROPERTY TAXES OWED TO THE APPLICABLE CITY, COUNTY OR OTHER LOCAL GOVERNMENT; AND (2) ANY APPLICABLE SALES AND USE TAXES, WHETHER BILLED DURING THE LEASE OR AFTER IT HAS TERMINATED.**

**15. Late Charge and Return Payment Charge.** If we do not receive your total Monthly Payment within 10 days after it is due, you agree to pay a late charge of the greater of $30 or 5% of the amount of your Monthly Payment that is late. However, if you entered into the Lease in one of the following states, you agree to pay the late charge shown: Colorado, $15; Kansas, the lesser of $25 or 5% of the amount of your Monthly Payment that is late; Maine, the lesser of $10 or 5% of the unpaid portion of my Monthly Payment that is not received within 15 days after it is due; Iowa, $0. If any payment you make is returned to us unpaid for any reason, or if any electronic debit authorization is not paid, you agree to pay us a $30 return payment charge per item. However, if you entered into this Lease in one of the following states, you agree to pay us the charge shown: Arizona, Colorado, Indiana, Michigan, North Carolina, Oklahoma, Nevada or West Virginia, $25; Utah, $20; Maine, $0. In no event will you be required to pay a late or return payment charge that exceeds the amount permitted by law.

**16. Mileage Allowance/Refund.** The total number of miles you can drive the Vehicle without being charged for excess mileage as disclosed in Section 11 is your "Mileage Allowance." The number of miles on the Vehicle when it was delivered as disclosed in Section 4.A, Odometer/Mileage, do not count against your Mileage Allowance. Because the Vehicle's odometer reading was 12 when delivered and your Mileage Allowance is 30,000, we will not charge you excess mileage until the Vehicle's odometer exceeds 30012 miles ("Excess Mileage").

☐ If this box is checked you elect to purchase a mileage allowance that is higher than the standard mileage allowance. We used your higher Mileage Allowance to calculate the Residual Value which results in a higher monthly payment than the monthly payment for a lease with the standard mileage allowance. You may be entitled to a refund of N/A cents per unused mile for each mile under N/A total mileage on the Vehicle's odometer at the end of the Lease Term, not to exceed a refund of N/A miles. You will not be entitled to a refund regardless of the total mileage if: (a) the Vehicle is a Total Loss (see Section 27), (b) you default or terminate this Lease early, (c) you purchase the Vehicle, or (d) the refund would be less than $1. We will apply any refund first to any amount you owe under the Lease, and send you any remaining refund due.

**17. Warranty.** If the Vehicle is new, it is subject to the standard manufacturer's new vehicle warranty. If the Vehicle is used, it is subject to the remainder of the standard manufacturer's new vehicle warranty. ☐ If this box is checked, the Vehicle is also covered by the following: _____
N/A _____. Documents separate from this Lease describe coverage and limits. **UNLESS A WARRANTY IS DISCLOSED ABOVE, LESSOR, TO THE EXTENT PERMITTED BY LAW, (1) MAKES NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESSED OR IMPLIED, AS TO THE VEHICLE OR ANY OF ITS PARTS OR ACCESSORIES AND (2) MAKES NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE. YOU ACKNOWLEDGE THAT YOU ARE LEASING THE VEHICLE FROM THE LESSOR "AS IS."**
If this Lease is entered into in Kansas, Maine, Massachusetts, Mississippi, Vermont (if the Vehicle is new) or West Virginia, Lessor does not disclaim any implied warranty of merchantability or fitness for any particular purpose if the Lease is for personal, family or household purposes.

### YOUR OBLIGATIONS DURING THIS LEASE

**18. Vehicle Use.** You agree not to use (or permit others to use) the Vehicle: (a) in any way that violates the law, the terms of your insurance policy or the Lease; (b) to transport goods or people for hire; (c) to lease or rent the Vehicle to others; (d) outside the state in which it is titled for more than 30 days without our prior written consent; or (e) outside the United States, except for less than 30 days in Canada except if you are a resident of Texas, you will not remove the Vehicle from the United States for any period. You further agree not to: (y) allow an uninsured or unlicensed person to operate the Vehicle at any time; or (z) allow any third party, other than your spouse, to operate the Vehicle without prior written consent from Lessor. You will not change the Vehicle's body or interior in any way without our prior written consent.

**19. Vehicle Maintenance and Repair.** You agree to maintain the Vehicle in good operating condition and service it in accordance with the Vehicle owner's manual. You will keep complete maintenance records. You may be subject to a charge if you fail to service it in accordance with the Vehicle owner's manual or fail to provide complete maintenance records to us when you return the Vehicle. You are responsible for repairs of all physical damage that is not a result of normal wear and use. All service and repairs must be made with new and genuine manufacturer's original equipment replacement parts, regardless of the terms of your insurance policy. You agree to comply with all manufacturer recall notices.
You agree not to make any alterations that decrease the Vehicle's value or usefulness or that violate the law. If you add non-standard equipment to the Vehicle, you will return it to the original manufacturer specifications before you return the Vehicle. If the non-standard equipment cannot be removed or modified without decreasing the Vehicle's value or usefulness when the Vehicle is returned to us, the equipment will become our property when the Vehicle is returned and you may be subject to an Excessive Wear charge under Section 20. If the Vehicle's odometer becomes inoperative or malfunctions, or you discover any signs of alteration or tampering, you agree to notify us and have the odometer repaired or replaced within 30 days of such malfunction, repair, or replacement, in compliance with the lease and warranty requirements. We may inspect the Vehicle at any reasonable time.

**20. Standards for Excessive Wear.** You agree to pay us the costs of repairs for damage to the Vehicle that is not the result of normal wear and use, whether or not we actually repair the Vehicle ("Excessive Wear"). Excessive Wear includes, but is not limited to: (a) inoperative electrical or mechanical parts; (b) dented, bent, scratched, chipped, rusted, pitted, broken or mismatched body parts, paint, vehicle identification items, trim or grill work; (c) non-functioning, scratched, cracked, pitted or broken glass or lights; (d) missing equipment, keys, key fobs, parts, accessories, adornments or manuals; (e) torn, damaged, burned, or stained interior or excessive odor; (f) repair of any damage that makes the Vehicle unlawful or unsafe to drive; (g) damage due to installation or removal of non-manufacturer, after-market or replacement parts; (h) damage (including damage to the engine) due to failure to service and maintain or the deferral of the servicing and maintenance of the Vehicle in accordance with Section 19 and the manufacturer's recommendations and specifications; (i) any change to the Vehicle that damages the Vehicle or is prohibited by Section 19; or (j) tires with tread depth of less than 1/8" remaining at the shallowest point, and/or tires that are not all of the same original type, grade, quantity or quality as those delivered with the Vehicle.

**21. Odometer Disclosure, Tampering and Liability.** **Federal law, and some State laws, require a lessee to disclose the mileage of a leased vehicle to the lessor in connection with the transfer of ownership. Failure to complete or making a false statement may result in fines and/or imprisonment.** We will provide you with an odometer disclosure statement to complete in connection with the termination of the Lease. If

the odometer was tampered with or otherwise does not work correctly and you cannot prove the mileage shown on the odometer, you agree to pay us our reasonable estimate of any reduction in the Vehicle's fair market value caused by the inability to determine the Vehicle's actual mileage.

**22. Required Insurance. NO PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE.** During the Lease Term and until you return the Vehicle you agree to properly maintain personal liability and physical damage insurance with coverage not less than: $100,000/$300,000 bodily injury; $50,000 property damage; and comprehensive liability, including fire and theft, and collision liability, each covering the Vehicle's actual value (payable in cash and not by a replacement vehicle) with a maximum deductible of $1,000. The coverage will name Lessor as an additional insured and loss payee. You will provide us with at least 30 days advance notice of cancellation. We have the right to endorse your name on any insurance check or settlement we receive. We also have the right to speak to your insurance company about your insurance coverage. You agree to cooperate fully with us and any insurance company in the investigation and defense of any claim related to the Vehicle.

You understand that your insurance is primary for the limits of liability and personal injury protection and any insurance we have is noncontributory and excess over any other collectible insurance, whether primary, excess or contingent.

**23. Vehicle Loss, Damage, Taken.** You agree to immediately notify us if the Vehicle is damaged or destroyed in an accident, stolen, abandoned, or taken by law enforcement or other governmental agency. If the Vehicle is stolen or destroyed, we may, at our sole discretion, not terminate the Lease and substitute a like vehicle in its place.

**24. Registration, Titling, and Taxes.** You agree to keep the Vehicle properly registered during the Lease Term. You will pay all registration, title, license, inspection fees and other official fees and taxes related to the Vehicle when due. We may, at our discretion, pay these fees or taxes to protect our interest in the Vehicle. If we pay such fees or taxes on your behalf, you agree to reimburse us upon request. If you fail to reimburse us within 60 days after our request for payment, we may pursue our remedies under Section 29, including imposing additional charges on the unreimbursed amount. If you move to another location during the Lease Term or it becomes necessary for us to correct any title or registration deficiencies, or to perfect our interest in the Vehicle, you agree to pay us a $25 service charge in addition to the actual fees or taxes, unless prohibited by law, to process registration, title and license documents.

**25. Tolls, Traffic and Parking Tickets and Other Fines.** You are responsible to pay all third-party charges (including but not limited to, toll violations, traffic tickets, parking tickets, towing fees, storage fees) incurred during the Lease Term. If we receive notice of any third-party charges related to the Vehicle, you agree to pay us a $10 service charge per item for processing the notice or such lesser amount that is allowed by law. We may, at our discretion, and irrespective of any right you may have to challenge third-party charges in court, pay these charges to protect our interest in the Vehicle. If we pay such charges on your behalf, you agree to reimburse us upon request. If you fail to reimburse us within 60 days after our request for payment, we may pursue our remedies under Section 29, including imposing additional charges on the unreimbursed amount.

**NOTICE TO COLORADO LESSEES:** Under Colo. Rev. Stat. § 43-3-302, you are liable for payment of a toll evasion violation civil penalty incurred on or after the date you take possession of the Vehicle. We may give your name, address, and state driver's license number to the toll road or toll highway company when a toll evasion violation civil penalty is incurred in Colorado during the term of the Lease.

**26. Power of Attorney.** You appoint us or our designated agent, to the extent allowed by law, as your attorney-in-fact to: (a) pursue and settle any insurance claim related to the Vehicle; (b) receive payments and endorse your name on any check or other payments instruments; (c) to sign your name to any title, registration, or other documents related to the Vehicle; (d) execute proofs of claim or other documents related to the Lease; (e) cancel any credit life, credit disability, lease protection, service contract, or other optional contracts or products included in the Capitalized Cost of the Lease ("Ancillary Products") and apply any refunds to (i) any amounts owing on the Adjusted Lease Balance for the premiums or costs of Ancillary Products in the event of a Total Loss (see Section 27(g)); or (ii) any other amounts you owe on the Lease; and (f) take other actions necessary to preserve our interest in or allow your legal operation or possession of the Vehicle. You agree to provide us upon request a separate executed power of attorney if an original document is necessary to accomplish any of the actions under this power of attorney. This power of attorney is coupled with an interest in the Vehicle and is not revocable.

## DEFAULT

**27. Total Loss of Vehicle.** If the Vehicle is damaged beyond repair or stolen and deemed a total loss under your insurance coverage ("Total Loss") you will owe us the following and nothing more under the Lease once we receive the full insurance proceeds under the insurance policy:

(a) the deductible amount under your insurance policy; plus

(b) all amounts due and owing under the Lease as of the date of the Total Loss, including past due Monthly Payments, late fees, official fees and taxes or other amounts assessed under the Lease; plus

(c) any amounts (including Monthly Payments) that become due after the date of the Total Loss and before our receipt of the full insurance proceeds; plus

(d) any Excess Mileage due under the Lease determined as of the date of the Total Loss; plus

(e) any Excessive Wear due under the Lease determined just prior to the Total Loss, unless your insurance company deducted an amount from the actual cash value of the Vehicle for excess wear (excluding excess mileage), then you will pay the amount of the insurance company's excess wear deduction; plus

(f) any amount of the Adjusted Lease Balance owing on the Lease as of the date of the Total Loss for a prior credit or lease balance; plus

(g) any amount of the Adjusted Lease Balance owing upon our receipt of the full insurance proceeds that is the remaining balance of the premiums or costs for Ancillary Products to the extent you are entitled to, and a refund is received, from the product provider; plus

(h) any amounts your insurance company deducted from the actual cash value of the Vehicle not attributed to excess wear or use of the Vehicle.

If the insurance requirements of the Lease are not satisfied at the time of the total loss of the Vehicle, your liability for the loss will be calculated under Section 29. Your liability for the total loss will also be calculated under Section 29 if: (i) the total loss is due to your fraud, intentional wrongful act or omission, or gross negligence; (ii) you fail to appropriately report the theft to the police; or (iii) the Vehicle is forfeited or confiscated under governmental authority. In the event of a total loss of the Vehicle you will have no further rights or claims to the Vehicle and you assign us all of your rights under any insurance policy.

**28. Default.** You will be in default of the Lease if any of the following occurs ("Default"):

(a) You fail to make a payment required under the Lease when due;

(b) You fail to properly maintain the required insurance;

(c) You fail to return the Vehicle when required under the Lease;

(d) You abandon the Vehicle;

(e) You or a guarantor become(s) insolvent;

(f) Any information in your credit application or a guarantor's credit application is materially false or misleading;

(g) You, or your property, becomes the subject of a proceeding (voluntary or involuntary) in bankruptcy;

(h) You become incompetent or die;

(i) You are convicted of a serious misdemeanor or a felony;

(j) The Vehicle is stolen, lost, damaged beyond repair or is otherwise rendered unavailable or unsuitable for use or is declared a Total Loss;

(k) The Vehicle is subject to, or at risk of, seizure, confiscation, forfeiture, levy or other involuntary transfer by governmental, administrative or legal process;

(l) Your driver's license expires or is suspended, revoked, canceled or otherwise restricted;

(m) You appear on a governmental list, such as the OFAC list published by the U.S. Treasury Department, which prohibits us from doing business with you;

(n) You otherwise fail to comply with any other term, provision or condition of the Lease or related agreement, or fail to keep any other promise made to us; or

(o) Anything else happens that adversely affects our interest in the Vehicle, or your ability to comply with the obligations under the Lease.

However, in Nevada ONLY, I will be in default only if at least one of these conditions is met and (i) at least one Monthly Payment is more than 30 days past due or (ii) the prospect of payment, performance, or realization of the Vehicle under this Lease is significantly impaired.

**29. Remedies Upon Default.** If you are in Default, subject to any required notice or cure period and to the extent allowed by law, we may do any or all of the following:

(a) Terminate the Lease and your rights to possess and use the Vehicle;

(b) Take possession of the Vehicle by any method allowed by law;

(c) Take and store any personal property in the Vehicle and dispose of it as allowed by law;

(d) Cancel any remaining term on any Ancillary Product and apply any premium refund to amounts you owe on the Lease;

(e) Use any electronic tracking device installed on the Vehicle to find the Vehicle; and

(f) Pursue any other remedy available to us by law.

If you are in Default and we terminate this Lease early, you agree to pay us the Early Termination Charge under Section 31. If you are in Default and the Lease is at the end of the Lease Term, you agree to pay us the amount owed under Section 32. In addition to the above charges, you agree to pay all reasonable expenses in the enforcement of these remedy provisions, to the extent expenses in the enforcement of these remedy provisions, to the extent allowed by law, including but not limited to: (a) all fees and expenses related to recovering of the Vehicle, transportation, storage and or sale of the Vehicle ("Vehicle Recovery Charges"); and (b) all fees and costs of collections, including court costs and reasonable attorneys' fees and expenses. You will not be charged a Disposition Fee if we charge you Vehicle Recovery Charges. If you entered into the Lease in Colorado, Kansas, Oklahoma or South Carolina, the maximum attorneys' fees you will be charged is 15% of the unpaid amount due. If you entered into the Lease in Iowa, Ohio, or West Virginia, you will not be charged attorneys' fees. If you entered into the Lease in Maine, you will not be charged attorneys' fees or collection costs. You further agree to pay us simple interest at a rate of 18% per annum (or such lesser rate that may be allowed under applicable law) on all expenses we incurred and all obligations you owe under the Lease, other than earned but unpaid Rent Charges, that remain unpaid after our request for payment.

If you reside in Texas, you waive notice that: (a) we intend to terminate the Lease and require you to return the Vehicle; (b) we have terminated the Lease and that you are required to return the Vehicle; (c) we intend to require you to pay the Early Termination Charge under Section 31; (d) we are requiring you to pay Early Termination Charge under Section 31; (e) we intend to take possession of the Vehicle; (f) we have taken possession of the Vehicle; and (g) we intend to exercise our rights or have exercised our rights.

## ENDING YOUR LEASE

**30. Purchase Option.** You have an option to purchase the Vehicle AS-IS, WHERE-IS. End of Lease Term: You may purchase the Vehicle at the end of the Lease Term provided you have paid all amounts due under the Lease. If you elect to buy the Vehicle, you will notify us prior to the end of the Lease Term. The purchase price of the Vehicle will be the Residual Value plus the purchase option fee disclosed in Section 12. Prior to End of Lease Term: You may purchase the Vehicle any time during the term of the Lease Term provided you have paid all amounts due under the Lease up until the date of purchase. The purchase price of the Vehicle will be the Adjusted Lease Balance described in Section 31, plus the purchase option fee disclosed in Section 12. You agree to complete any documents we require to process the purchase. You also agree to re-register and re-title the Vehicle into your name at your own expense within the time required by law after the purchase. If you fail to do so, we reserve the right to cancel the registration. You will not be liable for any Excessive Wear or Excess Mileage if you purchase the Vehicle. The purchase option price does not include official fees, such as taxes, title, registration and license/tags. You will pay all official fees and taxes related to the Vehicle purchase when requested. We reserve the right to refuse to sell the Vehicle, at our sole discretion, due to an unresolved safety recall.

**31. Early Termination of the Lease.** You may terminate this Lease at any time provided you are not in Default under Section 28 and you return the Vehicle to a location selected by us and satisfy all of the early termination obligations under the Lease. If you do not purchase the Vehicle under Section 30, you agree to pay us the lesser amount between Calculations A and B below for returning the Vehicle and terminating the Lease before the end of the Lease Term ("Early Termination Charge"):

  (a) Calculation A. The sum of: (1) all remaining Monthly Payments; plus (2) any past due Monthly Payments; plus (3) any official fees and taxes related to the termination of the Lease; plus (4) any other unpaid amounts owed under the Lease at the time of termination; plus (5) any Excessive Wear and Excess Mileage charges due under the Lease; plus (6) the Disposition Fee disclosed in Section 7.A.

  (b) Calculation B. The sum of: (1) any past due Monthly Payments; plus (2) any official fees and taxes assessed or billed in connection with the termination of the Lease; plus (3) any other unpaid amounts owed under the Lease at the time of termination except Excessive Wear and Excess Mileage charges; plus (4) the Disposition Fee disclosed in Section 7.A; plus (5) the amount by which the Adjusted Lease Balance exceeds the Realized Value of the Vehicle (each described below).

The "Adjusted Lease Balance" is determined at any given time by subtracting the Base Monthly Payments due through the early termination date from the Adjusted Capitalized Cost and adding to the difference the cumulative Rent Charge earned through the early termination date. The Rent Charge is calculated according to the "constant yield method" for any time period up to and including the date on which the Lease terminates. Under the constant yield method, each month's rent charge is earned in advance by multiplying the constant rate implicit in the Lease times the Adjusted Lease Balance. The Rent Charge calculations are based on the assumption that the Lessor will receive the Monthly Payments on the exact due dates and the Lease will continue the full Lease Term.

The "Realized Value" of the Vehicle is: (a) the price we receive for the Vehicle upon disposition in a commercially reasonable manner; (b) the fair market wholesale value established through use of generally accepted industry vehicle valuation analysis process; or (c) a price you and the Lessor agree to in a separate writing. If the Vehicle is a Total Loss under Section 27, the amount of any deductible and the proceeds of the settlement of the insurance claim we receive are the "Realized Value." The Realized Value may also be determined by an appraisal of the wholesale value of the Vehicle, which you may obtain, at your own expense from a professional, independent appraiser agreeable to both of us. If you obtain such an appraisal within 10 days after the Vehicle is returned to us, the appraisal will be the final and binding Realized Value.

**32. Scheduled Termination of the Lease.** Unless you terminate your Lease early or purchase the Vehicle, your Lease will terminate at the end of the Lease Term and you agree to pay us: (a) any Disposition Fee included in Section 7.A; plus (b) any unpaid Monthly Payments and other amounts due under the Lease; plus (c) any Excessive Wear and Excess Mileage charges; plus (d) any official fees and taxes related to the termination of the Lease. If you entered into the Lease in one of these states, the Disposition Fee will not exceed: Colorado, Iowa, Kansas, Maine, Oklahoma, West Virginia or Wyoming, twice your Monthly Payment; South Carolina or Indiana, three times your Monthly Payment. The Disposition Fee will be waived if you lease or finance the purchase of another vehicle and that agreement is assigned to BMW FS or its affiliates.

**33. Vehicle Return.** If you do not purchase the Vehicle, you agree to return it to a BMW dealership, or other location we specify, with all parts and accessories in good working order and with all manuals.

Upon return, you agree to complete and sign an odometer disclosure statement and a vehicle inspection report, which may be used in determining any amounts you owe under the Lease. If you do not return the Vehicle at the end of the Lease Term, you are in Default and you will pay us a total amount equal to the Monthly Payment pro-rated on a daily basis for the number of days until the Vehicle is returned to us. Payment of this amount does not give you the right to keep the Vehicle nor does it automatically extend the Lease.

## ADDITIONAL INFORMATION

**34. Indemnification.** You agree to indemnify, defend and hold Lessor harmless from all claims, liabilities, suits, losses, damages and expenses (including attorneys' fees and court costs) including, but not limited to, claims related to the condition, maintenance, use, ownership or operation of the Vehicle or breach of any obligation under this Lease, including claims made under a strict liability doctrine.

**35. Refundable Security Deposit.** We may use the refundable security deposit that you paid to us ("Security Deposit") to pay any amount you owe under this Lease at the end of the Lease Term or upon early termination of the Lease. You will not earn any interest on your Security Deposit. After you have paid all your obligations under this Lease, we will refund you any portion of your Security Deposit that we did not apply to amounts owed on the Lease.

**36. Assignment.** We may assign our interests under this Lease without your consent. YOU MAY NOT TRANSFER OR SUBLEASE THE VEHICLE TO A THIRD PARTY OR ASSIGN THE LEASE OR ANY RIGHTS UNDER IT WITHOUT OUR PRIOR WRITTEN APPROVAL, WHICH WE MAY WITHHOLD IN OUR SOLE DISCRETION.

**37. Notices.** All correspondence and notices will be sent to you at your Contact Address unless you give us a different address in writing. You will promptly inform us of any change in the addresses provided under the Lease.

**38. Contact Authorization.** You agree that all of the following apply: (a) we may monitor and record telephone calls regarding the Lease to assure the quality of our service or for other legally permitted reasons; (b) You expressly consent to our using prerecorded/artificial voice messages, text messages and/or automatic dialing equipment while servicing or collecting the Lease; (c) you agree that we may take these actions using any telephone numbers and email addresses that you provided in connection with the Lease application process or you provide in the future, even if the telephone number is for a cellular telephone and our use of the number results in charges to you; (d) you agree to notify us if you change or discontinue using any phone number you provide; and (e) you agree that in order to revoke the consent you provide in this Section 38, you must provide us written notice at: BMW Financial Services NA, LLC, Attn: Revocations, PO Box 3608, Dublin, Ohio 43016. The written notice must include your name, mailing address, the last four digits of your account number and the specific phone number for which you are revoking consent.

**39. Credit Information.** You authorize us and our Assignee to obtain from time to time, and for any purpose, consumer credit reports from consumer credit reporting agencies in connection with this Lease. You authorize us and our Assignee to report information about your account to credit reporting agencies and others who may lawfully receive such information. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**40. Other Terms. Waiver:** We may waive or delay enforcement of our rights under the Lease without affecting our rights on a later date and on future defaults. Severability: Any part of the Lease that is not enforceable shall

not affect the validity of the remainder of the Lease. **Joint Liability:** If more than one Lessee signs the Lease, each Lessee shall be jointly and severally liable for all obligations under this Lease. **Choice of Law:** Except as may otherwise be provided by law, the Lease will be subject to the laws of the state of Lessor's place of business set forth in Section 1. In the event that both parties agree not to arbitrate in accordance with Section 41, any dispute shall be brought in a court located in the state of Lessor's place of business. For leases contracted in Kansas: The Kansas Consumer Credit Code (Kan. Stat. Ann. § 16a-1-101 et seq.) applies to all leases in which the amount payable under the lease does not exceed $25,000. **Entire Agreement:** The Lease and all related agreements you sign in connection with your leasing of the Vehicle contain the entire agreement between you and us. Except for lease extensions of less than 6 months, Mileage Allowance adjustments, payment due date changes and payment deferrals or delays, which may be agreed to over the telephone or through mail or email without our signature, no change to this Lease or course of conduct will be binding unless in writing and signed by you and accepted by us. **Maintaining Payments:** You may not change or stop any Monthly Payments, even if you do not receive an invoice, and even if the Vehicle is stolen, destroyed, seized by the government or a court, unless otherwise provided in the Lease. **Lessee Warranties:** You represent that your driver's license and the driver's license of any authorized driver has not been revoked or suspended within the last 5 years. You promise that you have given a true amount owed for any vehicle you traded in. If the correct Prior Credit or Lease Balance is more than the amount shown in Section 4.B, you agree to pay us the excess amount upon demand. **Personal Property:** The Lessor shall not be responsible at any time for any personal property in the Vehicle. **Escheatment:** If for any reason we need to escheat any of your funds to an unclaimed funds department, we may retain a fee as allowed by state law.

## 41. ARBITRATION PROVISION

You agree that the provisions contained in this Arbitration Provision are part of the Lease. You acknowledge you read this Arbitration Agreement carefully before you signed the Lease.

Definitions. In this Arbitration Provision, "we" and "us" mean the Assignee (BMW FS or Financial Services Vehicle Trust, as noted in Section 2), and its corporate parents, subsidiaries, affiliates (including BMW of North America, LLC) and related persons or entities; and Lessor.

Applicable Law. This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. The arbitrator will apply applicable substantive law, statutes of limitations and privileges.

Disputes. Either you or we may elect to have any dispute(s) resolved by binding arbitration according to this Arbitration Provision. "Dispute" means any current or future claim or controversy, whether in contract, tort, statute or otherwise, arising out of or related to the Lease (including, but not limited to, your application for and the solicitation, origination, servicing, collection or termination of the Lease; your relationship with us; the purchase or condition of the Vehicle; the Vehicle's warranty(ies); your possession and operation of the Vehicle; and the interpretation, enforceability and scope of this Arbitration Provision, except the Class Action Waiver). This Arbitration Provision survives the termination of the Lease. Notwithstanding this Arbitration Provision, a claim can be pursued in small claims court instead of arbitration if the claim is in that court's jurisdiction and proceeds on an individual basis.

Rights Limited in Arbitration. This Arbitration Provision, when invoked, requires all disputes (except small claims as described above) to be resolved only by an arbitrator through final, binding arbitration on an individual basis. If a dispute is arbitrated, you and we give up the right to a trial in court or by jury. The information obtainable through discovery in arbitration is more limited than in a lawsuit. Other rights available in court may not be available in arbitration. Neither you nor we waive the right to arbitrate by exercising self-help remedies, filing suit or seeking or obtaining provisional remedies from a court.

Starting an Arbitration. It is the responsibility of the party prosecuting the claim(s) to commence the arbitration, including after a court compels arbitration. The party initiating arbitration may choose the American Arbitration Association (AAA), National Arbitration and Mediation (NAM) or any other arbitration organization that the parties agree upon in writing. If the parties are unable to come to a written agreement and/or if AAA or NAM refuses to serve as the arbitration organization or is unavailable, disputes may also be referred to an arbitrator appointed pursuant to section 5 of the FAA. Rules and forms for arbitrating a dispute with AAA may be obtained from AAA at www.adr.org. For NAM, the arbitration will be governed by NAM's Comprehensive Dispute Resolution Rules and Procedures and Fees in effect at the time the claim is filed. Rules and forms for arbitrating a dispute with NAM may be obtained at www.namadr.com, commercial@namadr.com, or 1-800-358-2550 ext. 128. Disputes will be arbitrated pursuant to this Arbitration Provision and the arbitration organization's consumer rules (or commercial rules in the event the organization does not have consumer rules) in effect when the dispute is filed. If there is a conflict between the rules of the arbitration organization and this Arbitration Provision, this Arbitration Provision controls.

Arbitrator and Location. The arbitrator must be an attorney or retired judge and will be selected in accordance with the applicable rules of the arbitration organization, or absent a rule, by agreement of the parties. The arbitration will be conducted based on written submissions, telephonically, by video or at a place reasonably convenient to the parties.

**No Class, Collective or Representative Arbitration. You and we agree to resolve any dispute in arbitration on an individual basis only, and not on a class, collective or representative basis. The Arbitrator may only consider claims on an individual basis and may not award declaratory, injunctive or other relief for the benefit of the general public or other non-parties to the arbitration. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE, CLASS MEMBER OR PRIVATE ATTORNEY GENERAL IN CONNECTION WITH ANY DISPUTE YOU MAY HAVE AGAINST US. The limitations in this paragraph are collectively referred to as the "Class Action Waiver."**

Severability. Notwithstanding any other provision of the Lease, this Arbitration Provision or the arbitration organization's rules, disputes regarding the interpretation, enforceability and scope of the Class Action Waiver shall be resolved by a court and not by an arbitrator. If any part of this Arbitration Provision, except the Class Action Waiver, is declared unenforceable, the rest of the Arbitration Provision will still apply. If the Class Action Waiver is declared unenforceable with respect to a claim for relief, the Arbitration Provision will not apply to that claim for relief but will still apply to the rest of the dispute, and no decision or award by the arbitrator shall be used or have any res judicata or collateral estoppel effect in any proceeding with respect to the claim for relief that is not arbitrated.

Costs. In all cases where required by law or the rules of the chosen arbitration organization, we will pay or advance any administrative, hearing or other arbitration fees. The arbitrator may award attorneys' fees, costs and expert or other witness fees as provided by applicable law.

Hearing and Award. The parties will arbitrate disputes before a single arbitrator. Except as otherwise provided by this Arbitration Provision, the arbitrator may award any party any remedy to which that party is entitled under applicable law. The arbitrator will issue a written decision. Except as may be permitted or required by law, as determined by the arbitrator, neither a party nor an arbitrator may disclose the existence, content or results of any arbitration hereunder without the prior written consent of all parties.

Appeal. The arbitrator's decision will be final and binding. Judgment upon any arbitration award may be entered in any court having jurisdiction. The parties have a limited right to appeal to the extent allowed by the Federal Arbitration Act.

**NOTICE TO MISSISSIPPI LESSEES: A DOCUMENT/SERVICE FEE IS NOT AN OFFICIAL FEE AND IS NOT REQUIRED BY LAW, HOWEVER, IT MAY BE CHARGED TO BUYER/LESSEE FOR THE PREPARATION, HANDLING AND PROCESSING OF DOCUMENTS AND THE PERFORMANCE OF SERVICES RELATED TO THE SALE OR LEASE OF A MOTOR VEHICLE AND MAY INCLUDE DEALER PROFIT. THIS NOTICE IS REQUIRED BY REGULATION OF THE MISSISSIPPI MOTOR VEHICLE COMMISSION.**

**NOTICE TO MICHIGAN LESSEES:** The Adjusted Lease Balance (described in Section 31) upon early termination may be different than the actual cash value of the Vehicle as determined by your insurer. Unless we agree to waive your GAP liability upon a Total Loss (see Section 27) then you will be responsible for the difference between the Adjusted Lease Balance and the Vehicle's actual cash value as determined by the insurer.

Lessee's Initials: __N/A__         Lessee's Initials __N/A__

## 42. LESSEE NOTICES AND SIGNATURES

**THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.**

**NOTICE TO CONSUMER:** 1. Do not sign this agreement before you read it. 2. You are entitled to a copy of this agreement. 3. You may prepay the unpaid balance at any time without penalty.

By signing below, you acknowledge that:
- This Lease is completely filled out;
- You have no ownership rights in the Vehicle unless and until you exercise your option to purchase the Vehicle;
- You have read all pages of this Lease carefully and agree to all of its terms, including but not limited to, the Arbitration Provision (Section 41); and
- You have received a completely filled in copy of this Lease.

Lessee's Signature X_____     Lessee's Signature X_____

_____     _____
(print name & title if a business)                                          (print name & title if a business)

## 43. GUARANTY

You jointly and severally guarantee payment and performance of all promises contained in this Lease. Upon default, Lessor may proceed immediately against you without first proceeding against the Lessee. Your liability will be unconditional and will not be affected by any settlement, extension, renewal or modification of this Lease whether or not by operation of law. You waive all right to notices of every kind, including rights to demand and presentment. You agree to pay all expenses (including reasonable attorneys' fees and legal expenses, as allowed by law) we incur if we have to enforce this Guaranty.

Guarantor's Signature X  **N/A**                                   Guarantor's Signature X  **N/A**

**N/A**                                                                              **N/A**
Name                                                                                 Name

**N/A**                                                                              **N/A**
Address                                                                              Address

## 44. LESSOR'S ACCEPTANCE AND ASSIGNMENT

By signing below, Lessor (1) accepts the terms, conditions and obligations of this Lease and (2) assigns all right, title and interest in the Vehicle and this Lease to the Assignee listed in Section 2. The origination of this Lease and the assignment of this Lease, including all amounts to become due under it, and any guaranty, are subject to the provisions of the Center Agreement and any other existing agreement between Lessor and BMW FS.

Lessor Name **MOMENTUM BMW MINI**                   Signature of Authorized Representative _____